# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Brick P. Houston,

     Plaintiff

v.

Downey, et al.,

     Defendants

Case No.: 2:21-cv-01337-JAD-NJK

**Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment**

[ECF No. 28]

     Pro se plaintiff and former Nevada inmate Brick Houston brings this civil-rights action under 42 U.S.C. § 1983, alleging that Nevada Department of Corrections (NDOC) employees Clayton Allison, Robert Downey, Tony Podesta, and other unnamed officers violated his First, Eighth, and Fourteenth Amendment rights by retaliating against him for filing grievances, using excessive force, and denying him proper notice about and access to disciplinary hearings. The defendants move for summary judgment, arguing that the record fails to support Houston's claims, the doctrine of qualified immunity shields them from suit, and Houston failed to exhaust the facility's grievance system before filing his retaliation claim.

     Because Houston failed to identify the unknown defendants who are the targets of his excessive-force claim, and the deadline to substitute them in has passed, I dismiss his Eighth Amendment claim for want of an identifiable defendant. I grant the defendants' motion for summary judgment on Houston's Fourteenth Amendment procedural-due-process claim because he has not shown that his liberty interest was impacted. But I deny summary judgment on Houston's retaliation claim because the defendants have not shown that he failed to exhaust the

grievance process, and Houston's verified facts establish genuine issues of material fact about the defendants' motives that must be resolved by a jury.

So this case proceeds to trial on Houston's First Amendment retaliation claim against Allison, Downey, and Podesta only.  But first I refer this case to this district's Pro Bono Attorney Pilot Program to attempt to find counsel willing to take Houston's case without charge and to the magistrate judge for a mandatory settlement conference.

## Background

### I.    Factual Background

Houston is a former inmate of two NDOC facilities: Wells Conservation Camp (WCC) and the Ely State Prison (ESP).  In his verified complaint, which I construe as a declaration because it is made under penalty of perjury,[1] Houston explains that on May 6, 2019, he approached correctional officer Clayton Allison in his office at the WCC, complaining of pain and asking to be placed on sick leave.[2]  Allison responded that Houston had to speak with Sergeant Robert Downey if he wanted to be approved for that leave.[3]  Houston asked Allison for a grievance to grieve the issue, but Allison told him no.[4]  Allison then took Houston to a room and locked him inside.[5]  Although the parties disagree about the reason why Allison locked him in the room—Houston declaring that it was his grievance request and the defendants maintaining

---

[1] See 28 U.S.C. § 1746.

[2] ECF No. 12 at 3 (verified complaint); ECF No. 28-3 at 2 (notice of interfering-with-staff charges).

[3] ECF No. 12 at 3; ECF No. 28-3 at 2.

[4] ECF No. 12 at 3; ECF No. 28-3 at 2.

[5] ECF No. 12 at 3; ECF No. 28-3 at 2.

that it was to manage Houston's disruptive and aggressive behavior—they both acknowledge that Houston was temporarily held there.

While Houston was in that room, correctional officer Tony Podesta visited him and said that if he didn't "let the issue go" his loaner TV would be confiscated.[6]  Houston was let out of the room shortly after that conversation.[7]  The next day, he amended his then-active § 1983 complaint to include Allison and Downey as defendants in that case.[8]  Houston made photocopies of his complaint, and he maintains that Allison and Downey both saw their names on those newly amended legal filings.[9]  He also filed an informal grievance about Allison's conduct.[10]  A few hours after he filed that grievance, Allison filed a misconduct report against Houston regarding their encounter on May 6th, charging him with delaying, hindering, and interfering with staff members.[11]  Podesta called Houston up to his office that same day for a hearing on the charge, and Houston was found guilty.[12]

---

[6] ECF No. 12 at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] ECF No. 28-12 at 3 (informal grievance).

[11] ECF Nos. 12, 28-3, 28-12.  There is some dispute about the exact dates on which these events occurred.  Houston claims that he filed his grievance on May 7th, but it's dated May 8th.  *Compare* ECF No. 12 at 4 *with* ECF No. 28-12 at 3.  Houston also claims that the disciplinary hearing occurred on May 7th, when the record reflects that it took place on May 8th.  But these disputes aren't material because the exact date does not factor into my analysis.  The parties ultimately agree that Houston was made aware of Allison's charge and had a hearing on that charge on the same day.

[12] ECF No. 12 at 5; ECF No. 28-5 at 4 (disciplinary-history report).

During the hearing, Houston put his hand on Podesta's arm after he was warned not to.[13] A few days later, Houston bumped into Podesta as they encountered each other in a hallway.[14] Podesta charged Houston with battery.[15]  At the hearing on that battery charge, Houston denied intentionally bumping into Podesta and was found not guilty.[16]  Houston was transferred to ESP on the same day that Podesta filed the battery charge against him.[17]

During the transfer, two unknown officers made Houston's wrist, waist, and leg restraints so tight that it caused him severe pain.[18]  The officers swerved the car back and forth during the drive, causing Houston additional pain because he was not wearing a seatbelt.[19]  When Houston arrived at ESP, he was kept in a 24-hour lockdown until he was transferred out a month and a half later.[20]

## II.    Procedural Background

Houston filed this civil-rights action under 42 U.S.C. § 1983, against Allison, Downey, Podesta, several other NDOC employees, and the Offender Management Division for retaliating against him for filing grievances, failing to investigate his allegations of misconduct, using excessive force to transport him to ESP, and violating his right to a hearing.[21]  I screened his complaint and found a cognizable First Amendment retaliation claim against Allison, Downey,

---

[13] ECF No. 28-6 (notice of battery charges).

[14] *Id.*

[15] *Id.*; ECF No. 28-1.

[16] ECF No. 12 at 6; ECF No. 28-9; ECF No. 28-10 (summary of hearing).

[17] ECF No. 28-1 at 5 (bed assignments).

[18] ECF No. 12 at 7.

[19] *Id.* at 8.

[20] *Id.* at 6; ECF No. 28-1 at 5.

[21] ECF No. 12.

and Podesta; an Eighth Amendment claim against the unknown officers; and a Fourteenth Amendment claim against Podesta, so those claims moved on to the litigation track.[22]  But I explained that the Eighth Amendment excessive-force claim would only proceed once Houston could identify the unknown officers transporting him to ESP.[23]  Because he has not done so, discovery is closed, and the deadline to add or replace parties has passed,[24] I dismiss that claim for want of an identifiable defendant.

Defendants Allison, Downey, and Podesta now move for summary judgment on Houston's First and Fourteenth Amendment claims, arguing that there is no genuine dispute that they retaliated against him or deprived him of due process.[25]  But even if there was, the defendants contend, Houston failed to exhaust his administrative remedies on his First Amendment claim, and they are shielded from these constitutional claims by the doctrine of qualified immunity.[26]  Houston responds that Allison, Downey, and Podesta only charged him with misconduct because he filed his grievance, and they violated his procedural due-process rights to notice and a hearing on those charges.[27]  Houston contends that the defendants are not entitled to qualified immunity because they violated his rights, and he exhausted the administrative remedies that were available to him.[28]

---

[22] ECF No. 11.

[23] *Id.* at 14 ("The Eighth Amendment excessive force claim MAY PROCEED against defendants John Doe transport officer and John Doe ESP officers when Houston discovers their identities and successfully moves to substitute them in.").

[24] *See* ECF No. 22.

[25] ECF No. 28.

[26] *Id.*

[27] ECF No. 33.

[28] *Id.*

1

2                                   **Discussion**

3    **I.      The defendants have not shown that Houston failed to exhaust his administrative
             remedies.**

4            The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available

5    administrative remedies before filing a civil-rights action to redress alleged constitutional

6    violations by prison staff.[29]  The Supreme Court has interpreted the PLRA as "requir[ing] proper

7    exhaustion," which "demands compliance with an agency's deadlines and other critical

8    procedural rules."[30]  Of course, "[a]n inmate need exhaust only such administrative remedies as

9    are 'available,'"[31] which requires that the procedures "are 'capable of use' to obtain 'some relief

10   for the action complained of.'"[32]

11           To succeed on a PLRA-exhaustion defense at summary judgment, the defendant must

12   "prove that there was an available administrative remedy" that the prisoner did not exhaust; the

13   burden then shifts to the plaintiff to provide evidence that the remedy was unavailable to him.[33]

14   But "the ultimate burden of proof remains with the defendant."[34]  A court should grant summary

15   judgment based on a lack of exhaustion only "[i]f undisputed evidence viewed in the light most

16   favorable to the prisoner shows a failure to exhaust."[35]

17

18

     _____

19   [29] 42 U.S.C. § 1997e(a).

20   [30] *Woodford v. Ngo*, 548 U.S. 81, 91, 93 (2006).

     [31] *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016).

21   [32] *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

22   [33] *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Block*, 549 U.S. 199,
     204 (2007)) (quotations omitted).

23   [34] *Id.*

     [35] *Id.*

                                          6

1      **A.     NDOC's grievance process is comprised of three levels.**

2      The defendants argue that Houston's First Amendment retaliation claim isn't justiciable

3 because he failed to complete NDOC's grievance process.  NDOC's Administrative Regulation

4 (AR) 740 requires inmates to follow three steps to exhaust the grievance process.[36]  Inmates must

5 first file an informal grievance to which the prison has 45 days to respond.[37]  If the prison denies

6 the grievance, an inmate can appeal by filing a first-level grievance, which the prison then has

7 another 45 days to respond to.[38]  If the prison again denies the grievance, he can appeal by filing

8 a second-level (and last) grievance.[39]  The prison then has 60 days to respond to the second-level

9 grievance.[40]  If that's denied or the prison fails to respond, the inmate has exhausted his

10 administrative remedies.

11

12      **B.     The defendants have not demonstrated that Houston abandoned his informal grievance such that it fell outside the purview of AR 740.06(2).**

13      The defendants argue that Houston did not properly exhaust his administrative remedies

14 because his informal grievance was denied based on a deficiency, and he was instructed to refile

15 it but never did.[41]  Houston responds that he did fully exhaust because he filed an informal

16 grievance and then got paroled.[42]  He argues that he provided his address to NDOC so he could

17

18

19

---

[36] ECF No. 68-15.

20 [37] *Id*. at 12.

21 [38] *Id*. at 6, 14.

[39] *Id*. at 6.

22 [40] *Id*. at 15.

23 [41] ECF No. 28 at 19–20.

[42] ECF No. 33 at 3.

1  receive grievance correspondence after he was released from custody, but NDOC refused to send

2  him anything.[43]

3      Houston filed an informal grievance on May 8, 2019, detailing his encounter with Allison

4  and his allegation of retaliation.[44]  NDOC timely denied that grievance on June 20, 2019, as

5  improper because Houston used more than two continuation forms to explain his complaint.[45]

6  Houston did not refile a corrected informal grievance, and he was paroled several weeks later.[46]

7      The defendants have the burden of showing that the grievance process was available to

8  Houston and that he did not properly exhaust it.  They point to the improper-grievance memo

9  that NDOC sent Houston upon his grievance's denial to show that he was told to correct an error

10  but never did.  The memo explains Houston's infraction—that he submitted too many

11  continuation forms—and requires that he correct it before he can move to the next grievance

12  level.[47]  It notes that he must "re-submit the grievance through the prescribed timeframe" or the

13  grievance is considered abandoned.[48]

14      But the memo does not include a timeframe to resubmit the grievance or a date when the

15  grievance is considered abandoned.  Nor do NDOC's administrative regulations supply a

16  deadline to correct denied grievances or specify the exact state of a grievance that has been

17  denied but with an unlimited time to refile.[49]  In short, Houston's grievance could not be

18

---

19  [43] *Id.*

20  [44] ECF No. 28-12 at 3.

    [45] *Id.* at 2.

21  [46] ECF No. 28-1 at 5.

22  [47] ECF No. 28-12 at 2.

    [48] *Id.*

23  [49] NDOC's provision for denied grievances merely states that an "inmate whose grievance is
    denied in its entirety may appeal the grievance to the next level . . . ."  ECF No. 28-11 at 6.

8

considered abandoned based on a "late" refiling because NDOC failed to establish when that refiling would become late.  So when Houston got released from prison, he had not abandoned his informal grievance based on a failure to resubmit it.  Rather, it essentially fell into a purgatory where it remained denied, but revisable.

AR 740.06(2), however, supplies finality.  The provision states that, "[i]f an inmate's sentence expires or [he] leaves the Department on parole, the grievance will be finalized on the current level.  No further appeal may occur.  It is the responsibility of the inmate to provide a forwarding address during the release process in order to receive a grievance response."[50]  It appears that AR 740.06(2) permits Houston's pending grievances to be "finalized" at their current level upon his release from custody.  So to establish that Houston failed to complete NDOC's grievance procedure by only filing an informal grievance, the defendants must show that his informal grievance falls outside the purview of AR 740.06(2).  They have not met that burden.  I thus conclude that the grievance process for Houston's retaliation claim was "finalized" when he was paroled, so he exhausted the process for that claim.

## II. The defendants are entitled to summary judgment on Houston's Fourteenth Amendment due-process claim, but his First Amendment retaliation claim proceeds to trial.

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[51]  When considering a summary-judgment motion, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[52]  When the

---

[50] *Id.* at 9.

[51] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[52] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[53]   The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[54]

### A. Summary judgment is warranted on Houston's due-process claim because the record does not support it.

Houston claims that Podesta violated his Fourteenth Amendment procedural-due-process rights by failing to give him proper notice of his interference-with-staff hearing, denying him an impartial decision maker, filing a false battery charge against him, and transferring him to ESP as punishment.[55]   The defendants move for summary judgment on this claim, arguing that the punishment for his interfering-with-staff charge did not implicate a liberty interest, he received sufficient notice of his battery charge and hearing, and Podesta was not involved in his transfer to ESP.[56]   Alternatively, the defendants argue that Podesta is entitled to qualified immunity.[57] Houston responds that the short notice of the interference-with-staff hearing denied him an opportunity to investigate, prepare, and collect witnesses and that Podesta did transfer him to ESP as punishment.[58]

---

[53] *Celotex*, 477 U.S. at 323.

[54] *Id.* at 322.

[55] ECF No. 12 at 5–6.

[56] ECF No. 28 at 16–17.

[57] *Id.* at 17.

[58] ECF No. 33 at 3.

1

2

        **1.**        ***Houston has not shown that a verbal reprimand is atypical or significant.***

3           The defendants do not dispute that Houston received less than 24-hours' notice of the

4 hearing for his interference-with-staff charge.[59]  They instead argue that his punishment for this

5 charge did not implicate a liberty interest sufficient to invoke the protections of the Fourteenth

6 Amendment.  An inmate is entitled to procedural-due-process protections only when a prison

7 disciplinary action "implicates a protected liberty interest in some unexpected matter or imposes

8 an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison

9 life."[60]  To determine whether a prison hardship is atypical and significant, courts consider: (1)

10 whether the challenged condition "mirror[s] those conditions imposed upon inmates in

11 administrative segregation and protective custody"; (2) the duration of the condition, and the

12 degree of restraint imposed; and (3) whether the state's action will invariably affect the duration

13 of the prisoner's sentence.[61]

14           Houston has not shown that the consequences he suffered were atypical and significant.

15 His disciplinary-history report shows that he received a "verbal reprimand" as punishment for

16 the delaying, hindering, and interfering-with-staff charge.[62]  Houston fails to show that a verbal

17 reprimand imposes an atypical and significant hardship on his life in prison sufficient to invoke

18 such a protection.[63]  Because the record does not contain facts creating a genuine dispute that the

19

20 [59] ECF No. 28 at 15–16.

[60] *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin v. Connor*, 515 U.S.
21 472, 484 (1995)) (cleaned up).

[61] *Sandin*, 515 U.S. at 486–87.
22
[62] ECF No. 28-5 at 4.

23 [63] *Sandin*, 515 U.S. at 484 (rejecting the premise that "any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause"); *see also Kenner v. Vidaurri*, 2013 WL 663151 at *7 (D. Nev. Feb. 21, 2013), aff'd, 569 F. App'x 489 (9th Cir. 2014) (holding

discipline Houston received for his interfering-with-staff charge implicated a protected liberty interest, he cannot succeed on his due-process claim.

### 2. Houston fails to provide evidence that Podesta was involved in the transfer decision.

The defendants contend that Houston was given sufficient notice of the battery-charge hearing and that Podesta did not punish him for that charge by transferring him to ESP because Podesta was not involved in the transfer.[64]  Houston does not deny that he received notice of the battery charge, had sufficient time to prepare for the hearing a month later, and was found not guilty of that charge.[65]  Instead he argues that Podesta falsely charged him with battery and transferred him to ESP as punishment before his hearing.[66]

The defendants offer the declaration of an employee from NDOC's Offender Management Division to show that the decision to transfer Houston was "recommended by Ely State Prison who oversees the classification of Brick Houston and was approved by the OMD pursuant to NDOC policy."[67]  The only evidence that Houston has to show that Podesta initiated and authorized his transfer as punishment is Houston's own declaration, speculating that Podesta had a role in that decision.[68]

---

that a verbal reprimand and 32 days in administrative segregation did not invoke a protected liberty interest); *Sells v. McDaniel*, 2009 WL 2168819, at *3 (D. Nev. July 16, 2009) (finding that a verbal reprimand alone "is too insignificant a punishment to implicate [an inmate's] constitutional rights").

[64] ECF No. 28 at 17.

[65] ECF Nos. 28-7, 28-9, 28-10.

[66] ECF No. 33 at 4.

[67] ECF No. 28-8 at 3.

[68] ECF No. 12 at 6.

But Houston lacks personal knowledge of NDOC's internal processes that resulted in his transfer, and his conclusory allegation pinning the decision on Podesta is not enough to create a material issue of fact that Podesta initiated or authorized the move or that the transfer was imposed as discipline for the battery charge. The Ninth Circuit has cautioned that courts must disregard facts in a declaration that go "beyond the declarant's personal knowledge."[69] Without evidence supported by facts showing personal knowledge of Podesta's involvement in his transfer, Houston cannot succeed on this due-process claim.[70] So the defendants are entitled to summary judgment in their favor on Houston's Fourteenth Amendment claim.

**B.    The defendants are not entitled to summary judgment on Houston's retaliation claim because the record reflects a genuine dispute about their retaliatory intent.**

Houston claims that his First Amendment rights were violated by Allison and Downey when they locked him in a room for requesting a grievance; by Allison, Downey, and Podesta for confiscating his loaner TV, charging him with interfering with staff, and finding him guilty of misconduct after seeing their names on Houston's court filings; and by Podesta for falsely filing a disciplinary report for battery.[71] All three defendants argue that they are shielded from these claims by qualified immunity or that these theories fail because the record lacks evidence to create a genuine issue of fact to support them.[72]

---

[69] *See S.E.C. v. Phan*, 500 F.3d 895, 10 (9th Cir. 2007) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002)).

[70] For the same reason, Podesta is entitled to summary judgment on the portion of Houston's retaliation claim based on Podesta's alleged decision to transfer Houston to ESP.

[71] *Id.* at 3–5.

[72] ECF No. 28.

Prisoners have a First Amendment right to file prison grievances and to pursue civil-rights litigation in the courts.[73]  To prevail on a First Amendment retaliation claim in the prison context, a prisoner must prove (1) that a state actor took some adverse action against him (2) because of (3) his protected conduct, and that such action (4) chilled his exercise of his First Amendment rights, and (5) that the action did not reasonably advance a legitimate correctional goal.[74]  The Ninth Circuit has long held that filing a grievance is protected conduct.[75]

### 1. *Genuine issues of fact preclude summary judgment on Houston's theory that he was retaliated against by Allison and Downey when they locked him in a room.*

The defendants argue that Allison and Downey did not put Houston in a locked room for requesting a grievance.[76]  They provide the investigative report from the incident, which explains that Houston became disruptive when he was denied sick leave and a grievance.[77]  The report states that he began interfering with Allison's work and was only put into a holding cell after he began acting aggressive.[78]  Houston conversely declares that, after he requested a grievance, Allison "immediately jumped up" and took him to a locked room to punish him for "complaining and mainly because [he] ask[ed] for a grievance."[79]

While a plaintiff's declaration can create a genuine issue of fact, to do so with respect to motive or intent, that declaration must contain facts from which it can reasonably be inferred that

---

[73] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).

[74] *Id.* at 567–68.

[75] *Id.* at 568.

[76] ECF No. 28 at 10.

[77] ECF No. 28-2.

[78] *Id.*

[79] ECF No. 12 at 3.

such a motive or intent existed.  "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."[80]  "Likewise, mere allegation and speculation do not create a factual dispute for purposes of summary judgment."[81]  So although a court must draw all reasonable inferences in favor of the non-moving party, [it] need not draw inferences that are based solely on speculation" without personal knowledge.[82]

Houston's declarations that he got locked in a room "for the purpose to punish" him because he was complaining that his "complaints of being in pain" were not being taken seriously or "because I ask[ed] for a grievance"[83] are conclusory, speculative, and lack the requisite personal knowledge.  The Ninth Circuit has "repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."[84]  But a retaliatory motive can also be shown by circumstantial evidence like timing.[85]  And here Houston declares, "I said give me a grievance, and Allison said "No" and immediately jumped up and took me to a lock[ed] room . . . ."[86]  This factual detail about the timing is sufficient to create a genuine issue of fact as to whether Houston was locked away because he was being aggressive or in retaliation for exercising his First Amendment rights.

---

[80] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[81] *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).

[82] *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir. 2009).

[83] ECF No. 12 at 3.

[84] *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

[85] *See Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

[86] ECF No. 12 at 3.

1

2

### 2.   There is a genuine dispute whether Allison, Downey, or Podesta confiscated Houston's TV as retaliation for protected conduct.

3   The defendants contend that they did not retaliate against Houston by confiscating his TV

4   and writing him up for delaying, hindering, and interfering with staff.[87]  They provide Allison's

5   declaration to prove that Houston never even had a TV and the investigative report to establish

6   that Houston was written up instead for being disruptive and aggressive.[88]  Houston counters this

7   evidence with his declaration that Podesta visited him while he was locked in the room and said

8   that, if he didn't let the grievance issue go, his loaner TV would be confiscated.[89]  He adds that,

9   after he was released from the room, Allison and Downey saw him amend his court filings.  And

10  a few hours after he filed his grievance against Allison, his loaner TV was taken and Allison

11  wrote him up for the incident that occurred two days prior.[90]  These factual details about the

12  timing of these events[91] create a genuine dispute about the defendants' retaliatory intent.

13

14

### 3.   Podesta's motive for filing a battery charge against Houston is genuinely disputed.

15  Houston's claim that Podesta retaliated against him by filing the battery charge in order

16  to get him transferred to ESP is similarly genuinely disputed.  Houston declares that the

17  allegations in the battery report are fabricated and that Podesta wrote it with the intention of

18

19

---

20  [87] ECF No. 28-3 at 2.  Houston's complaint includes very few allegations against Downey, but
    because the defendants do not seek summary judgment based on Downey's lack of personal

21  involvement, I do not address it.

    [88] *Id.*; ECF No. 28-16 at 3.

22  [89] ECF No. 12 at 4.

23  [90] *Id.* at 4–5.

    [91] *Bruce*, 351 F.3d at 1288.

transferring him to ESP "due to [his] complaints."[92]  The defendants merely point to the investigatory report to show that Podesta filed the charge because Houston touched his arm and bumped into him.[93]  But the investigatory report is not conclusive evidence that Podesta didn't act with a retaliatory motive because the record reflects that Podesta warned Houston against requesting and filing grievances and presided over the hearing on the interfering-with-staff charge that Allison filed mere hours after Houston's protected conduct.[94]  So the proximal timing of these events is circumstantial evidence of Podesta's motive for filing the misconduct report against Houston, and it precludes summary judgment on this retaliation theory.

In sum, Houston has put forth circumstantial evidence of the defendants' retaliatory intent.  When viewed in the light most favorable to him, that evidence creates a genuine issue of material fact about whether Allison, Downey, and Podesta locked Houston in a room, confiscated his TV, or charged him with interfering with staff and battery in retaliation for his First Amendment protected activity.  So I deny the defendants' motion for summary judgment on the bulk of Houston's retaliation claim.

## III.   Defendants have not established that the doctrine of qualified immunity shields Allison, Downey, or Podesta from Houston's First Amendment claim.

The defendants contend that they are entitled to summary judgment for the additional reason that qualified immunity shields them from suit.  The doctrine of qualified immunity protects government officials "from money damages unless a plaintiff pleads facts showing that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly

---

[92] ECF No. 12 at 6.

[93] *Id.*

[94] ECF No. 28-10 at 3.

established' at the time of the challenged conduct."[95]  Courts "have discretion to choose which qualified-immunity prong to address first" and, depending on the conclusion reached for the first-analyzed prong, "need not address the other."[96]  "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."[97]

I start with the clearly-established-law prong of the qualified-immunity analysis.  "The prohibition against retaliatory punishment is clearly established law in the Ninth Circuit, for qualified immunity purposes."[98]  It's also clearly established that "[p]risoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so."[99]  And correctional officers may not retaliate against inmates for reporting staff misconduct.[100]  The Ninth Circuit has held that denying medical care, threatening transfer, or destroying property clearly violates an inmate's constitutional rights when done to chill an inmate's right to file grievances or lawsuits.[101]  If a reasonable jury believes Houston's version

---

[95] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[96] *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (departing from the mandate in *Saucier v. Katz*, 533 U.S. 194, 207 (2001), that the first question must be resolved first)).

[97] *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

[98] *Rhodes*, 408 F.3d at 569 (cleaned up).

[99] *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

[100] *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

[101] *See Rhodes*, 408 F.3d at 568 (finding a violation of clearly established law when prison guards "arbitrarily confiscated, withheld, and eventually destroyed [the inmate's] property, threatened to transfer him to another correctional institution, and ultimately assaulted him"); *Brodheim*, 584 F.3d at 1270 (noting that "[t]he mere threat of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect"); *Tomel v. Hawaii*, 570 F. App'x 717, 719 (9th Cir. 2014) (unpublished) (finding allegations that prison official withheld medication and took plaintiff off sick-call lists sufficient to state a retaliation claim).

of the facts, Allison, Downey, and Podesta should have known that their conduct would violate clearly established First Amendment law.  These disputes about whose version of the story is true thus preclude me from granting summary judgment based on qualified immunity.

**Conclusion**

IT IS THEREFORE ORDERED that Houston's Eighth Amendment excessive-force claim is DISMISSED with prejudice for want of a defendant.  IT IS FURTHER ORDERED the defendants' motion for summary judgment **[ECF No. 28] is GRANTED in part and DENIED in part:**

- Summary judgment is GRANTED in favor of the defendants on Houston's Fourteenth Amendment claim and on Houston's First Amendment claim that is based on the theory that Podesta transferred him to Ely State Prison.

- In all other respects, the motion is DENIED.

**This case proceeds to trial on Houston's First Amendment retaliation claim against Defendants Allison, Downey, and Podesta for locking him in a room; confiscating his loaner TV and charging him with delaying, hindering, and interfering with staff; and for charging him with battery**.

IT IS FURTHER ORDERED that **this case is REFERRED to the Pro Bono Program** adopted in General Order 2019–07 for the purpose of screening for financial eligibility (if necessary) and identifying counsel willing to be appointed as counsel for Plaintiff Brick Houston at no expense to him for all purposes through conclusion of trial.  By referring this case to the Pro Bono Program, I am not expressing an opinion on the merits of the case, and there is no guarantee that the program will be able to find Houston a lawyer willing to represent him at no cost.  **The Clerk of Court is directed to forward this order to the Pro Bono Liaison.**

IT IS FURTHER ORDERED that **this case is REFERRED to the magistrate judge for a mandatory settlement conference**.  The parties' deadline for filing the proposed joint pretrial order is stayed until 20 days after the settlement conference, should this case not settle.

_____

U.S. District Judge Jennifer A. Dorsey

August 19, 2024